# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

SAVITAR CHARUDATTAN
 and MICHALE HOFFMAN,

     *Plaintiffs*,

v.                          **Case No. 1:18cv109MW/GRJ**

SADIE DARNELL, as Sheriff
of Alachua County,

     *Defendant*.

_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This case involves the federal right to freedom of speech and the state right to public records in the context of government-operated social media accounts. Two Florida residents assert that the Sheriff of Alachua County, Florida, violated their federal constitutional right to free speech by deleting their comments from and blocking their access to two social media accounts operated on Facebook. Additionally, one of the residents asserts that the Sheriff failed to fulfill her state law duty to make available, upon request, the public records related to one of those Facebook accounts. The Sheriff now moves to dismiss these claims.

1

# I

As an initial matter, this Court recognizes that when considering a motion to dismiss, this Court must accept as true the factual allegations in the complaint and construe those allegations in a light most favorable to the plaintiff. *See Glover v. Liggett Group*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

According to the allegations in the First Amended Complaint, Savitar Charudattan and Michale Hoffman are private citizens who are interested in "independent journalism and the preservation of civil liberties." ECF No. 14, at ¶¶ 7-9. Both investigate various government entities' infringements on individuals' civil rights and use online social media platforms, such as Facebook,[1] to report on such matters. *Id*. at ¶ 9. Sadie Darnell is the Sheriff of Alachua County and is responsible for the operations and management of the Alachua County Sheriff's Office. *Id*. at ¶¶ 4, 12. Among its official activities, the Sheriff's Office operates social media accounts, including a Facebook page (the "Sheriff's Office's page"), to provide the community with public safety information and other news. *Id*. at ¶ 37. The Sheriff's Office's social media

---

[1] Facebook is an online social networking platform that allows users to post text and multimedia content on their personal pages and the pages of others, thus facilitating interactive communication among users in relation to the posted content. *See Leuthy v. LePage*, No. 1:17-CV-00296, 2018 WL 4134628, *2-3 (D.Me. Aug. 29, 2018) (further discussing Facebook and social media).

accounts are governed by a social media policy, which disclaims an intent to create an open forum for unlimited discussion in response to its posts and includes a set of guidelines to be used in determining the type of content that can be excluded from the comments section of its posts. *Id*. at ¶¶ 37-40 (detailing the Sheriff's Office's social media policy and guidelines). Additionally, the Sheriff operates her own Facebook page (the "Sheriff's page"), which she used during her re-election campaign to interact with her constituents and inform the public about events within the community, such as grand jury findings and political fundraising gatherings. *Id*. at ¶ 13. Prior to her re-election in November 2016, the Sheriff's page carried the title of "Re-elect Sadie Darnell for Alachua County Sheriff"; however, following the election, the Sheriff changed the page title to "Sheriff Sadie Darnell" and ceased posting content to the page. *Id*. at ¶ 14.

In their first claim, Mr. Charudattan and Mr. Hoffman seek relief pursuant to 42 U.S.C. § 1983 (Count I), arguing that the Sheriff violated their First Amendment rights by deleting their comments from both the Sheriff's Office's page and the Sheriff's page and by blocking their ability to access those pages on an on-going basis. *Id*. at ¶¶ 47-54. This claim concerns four comments Mr. Charudattan and Mr. Hoffman made in response to posts on the Sheriff's Office's page and the Sheriff's page during the months leading up to the

3

November 2016 election.[2] *Id*. at ¶¶ 15-25, 31-36. The relevant posts and comments are as follows:

1. The Sheriff made a public post on the Sheriff's Office's page entitled "September 11 Update." *Id*. at ¶ 15. In response, Mr. Charudattan posted a critical comment regarding an Alachua County Sheriff's deputy who was involved in Mr. Charudattan's arrest in 2011. *Id*. at ¶ 16. The Sheriff deleted this comment, which prompted Mr. Charudattan to post a response concerning the deletion; however, the Sheriff deleted that comment as well. *Id*. at ¶¶ 17-18.

2. The Sheriff made a public post on the Sheriff's page entitled "Robert Dentmond Grand Jury Update." *Id*. at ¶ 19. In response, Mr. Charudattan posted the following comment: "What are you doing to address Constitutional [sic] training standards for your deputies?" *Id*. at ¶ 20. The Sheriff later deleted the comment. *Id*. at ¶ 23.

3. The Sheriff made a public post on the Sheriff's Office's page entitled "ODMP William Arthur May Update." *Id*. at ¶ 21. In response, Mr. Charudattan posted a "sarcastic critical comment," which the Sheriff later deleted. *Id*. at ¶ 22.

---

[2] Mr. Charudattan made three comments through his accountability Facebook page entitled "Stop Traffic Fraud," while Mr. Hoffman made one comment through his personal account. *See* ECF No. 14, at ¶¶ 16, 31.

4. Mr. Hoffman made a public one-star review on the Sheriff's Office's page, which included a link to a YouTube video of his recent detainment by the Alachua County Sheriff's Office. *Id.* at ¶ 31. Mr. Hoffman also posted this comment on reviews left by other users; however, the Sheriff later deleted Mr. Hoffman's review, as well as all of Mr. Hoffman's comments on the other posts. *Id.* at ¶¶ 32-33, 35.

Further, Mr. Charudattan alleges that the Sheriff has since banned his account from accessing or commenting on both the Sheriff's Office's page and the Sheriff's page, while Mr. Hoffman alleges that the Sheriff has since banned his account from the Sheriff's Office's page. *Id.* at ¶¶ 24-25, 36.

In his second claim, Mr. Charudattan seeks relief pursuant to Chapter 119, Florida Statutes (Count II), arguing that the Sheriff failed to comply with her statutory duty to provide Mr. Charudattan with public records relating to the Sheriff's page, including post and comment history, as well as a list of individuals and pages banned from accessing the Sheriff's page. *Id.* at ¶¶ 56-61. Mr. Charudattan asserts that while the Sheriff complied with four prior requests for public records relating to the Sheriff's Office's page, the Sheriff has refused to comply with his public records requests relating to the Sheriff's page. *Id.* at ¶¶ 26-27. When Mr. Charudattan asked the Sheriff why his requested records were not produced, the Sheriff's Office refused to cite any

exemptions to the public records law, arguing that the Sheriff's page is not a public record subject to disclosure under that law. *Id.* at ¶ 28. Since Mr. Charudattan's inquiry, the Sheriff has continued to refuse production of those records. *Id.* at ¶ 29.

In response to these claims, the Sheriff moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) that the amended complaint fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure; (2) that the Sheriff's page is not a public record, and thus, is not subject to mandatory disclosure under state law; and (3) that the Sheriff's Office's page is a limited public forum, within which the Sheriff is free to restrict speech that does not comply with the rules and guidelines the Sheriff has established for that limited public forum. ECF No. 17. This Court has considered the arguments before it and will address each argument in turn.

## II

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must comply with Rule 8(a) "so that, [the pleader's] adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the

plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 (11th Cir. 1985) (Tjoflat, J., dissenting)). Accordingly, Rule 12(b)(6) calls for the dismissal of a complaint if it fails "to state a claim upon which relief can be granted."

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "enough fact [exists] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Twombly*, 550 U.S. at 556). Moreover, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action" is not adequate to survive a rule 12(b)(6) motion to dismiss. *Id.*

### III

This Court previously granted, in part, the Sheriff's initial motion to dismiss, finding the original complaint constituted "shotgun" pleading "because it (1) reallege[d] all allegations within and (2) [did] not delineate which claims are attributable to which parties." ECF No. 13, at 2. Accordingly, this Court ordered Mr. Charudattan and Mr. Hoffman to amend their complaint to resolve these issues. *Id*. at 4. Subsequently, Mr. Charudattan and Mr. Hoffman filed an amended complaint; however, the Sheriff again argues that this amended complaint fails to remedy the concerns this Court initially raised. ECF No. 17, at 1-3. Specifically, the Sheriff argues that the amended complaint runs afoul of Rule 8 because both claims incorporate by reference the same set of allegations, even though the allegations relating to the public records claim are not strictly relevant to the allegations relating to each § 1983 claim. *Id*. at 3. In response, Mr. Charudattan and Mr. Hoffman argue that the amended complaint cured the issues this Court raised by clarifying which parties are asserting which claims and against whom. ECF No. 20, at 7-10.

After comparing the original complaint to the amended complaint, this Court agrees with Mr. Charudattan and Mr. Hoffman that the amended complaint solved a principal ambiguity present in the original complaint. Previously, both Count I (42 U.S.C. § 1983 claim) and Count II (public records

claim) used the term "Plaintiffs" to refer to the individuals asserting the relevant claims; however, the allegations set forth in both the original and the amended complaint indicate that only Mr. Charudattan has satisfied the requirements to assert a public records claim. *See* ECF No. 1; ECF No. 14. In the amended complaint, Count II now indicates that only one "Plaintiff" is asserting that claim, as compared to Count I, which both "Plaintiffs" assert. ECF No. 14, at ¶¶ 47, 55. While the amended complaint could provide greater specificity by using "Plaintiff Charudattan" in reference to Count II, this Court finds that determining whether Mr. Charudattan or Mr. Hoffman is the "Plaintiff" in Count II is not "virtually impossible" due to the absence of allegations made by Mr. Hoffman that could support a public records claim. *See Weiland*, 792 F.3d at 1325 ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'") (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

Similarly, the amended complaint reorganizes the factual allegations so that the facts relevant for each claim are grouped together; however, the amended Count I and Count II still incorporate by reference all the factual allegations stated in the complaint, including those allegations that can relate only to one or the other of the respective counts. While this amended complaint

9

is not a model of clarity, by process of elimination, this Court is able to determine from these allegations that Mr. Charudattan's § 1983 claim in Count I relates to the Sheriff's actions on both the Sheriff's Office's page and the Sheriff's page, that Mr. Hoffman's § 1983 claim in Count I relates to the Sheriff's actions on the Sheriff's Office's page, and that Mr. Chaurdattan's public records claim in Count II relates to the Sheriff's inaction on his record requests. Because this Court understands Mr. Charudattan's and Mr. Hoffman's allegations and claims, the Sheriff should be able to understand them as well. *See Weiland*, 792 F.3d at 1323 (noting the fatal flaw of shotgun pleading is the lack of adequate notice of a plaintiff's allegations and claims). Thus, the fact that the amended complaint repeats the full incorporation by reference error is not fatal to the complaint. Accordingly, this Court denies the Sheriff's motion to dismiss on Rule 8 grounds because the amended complaint satisfies Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."

## IV

Because this Court granted, in part, the Sheriff's initial motion to dismiss on Rule 8 grounds, this Court did not address the other issues the Sheriff again raises. In response to Mr. Charudattan's public records claim, the Sheriff argues that her Facebook page, as opposed to the Sheriff's Office's page,

is not a "public record" subject to disclosure under Florida's public records law, based on the Supreme Court of Florida's decision in *State v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003). ECF No. 17, at 4. Mr. Charudattan, however, argues that *Clearwater* does not require the conclusion that the Sheriff's page is not a public record; rather, Mr. Charudattan points to cases in which federal courts have determined that public officials' activities on social media sites have satisfied the "color of law" requirement for § 1983 claims. ECF No. 20, at 3-6.

Under article I, section 24 of the Florida Constitution, "[e]very person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer or employee of the state, or persons acting on their behalf." *See* § 119.01, Fla. Stat. (2018) (stating Florida's policy of open public records). A public record is "any material prepared in connection with official agency business which is intended to perpetuate, communicate or formalize knowledge of some type." *Shevin v. Byron, Harless, Schaffer, Reid & Assocs.*, 379 So. 2d 633, 640 (Fla. 1980) (citing § 119.011(1), Fla. Stat. (1975)). Materials such as drafts, notes or personal communications that are not intended as final evidence of knowledge to be recorded will not be considered public records. *Id*. Neither a purported public record's location nor possession by a private individual are determinative of

11

whether a record is subject to disclosure; rather, a court must look to the record's nature or content to determine its classification. *Id.*

Whether the Sheriff's page, including the content posted to the page, qualifies as a public record is a fact-specific inquiry. *See Clearwater*, 863 So. 2d at 154-55 (finding state employees' personal email conversations on government servers were not public records); *Shevin*, 379 So. 2d at 641 (finding notes of municipal electric authority's management hiring and consulting group were not public records); *Butler v. City of Hallandale Beach*, 68 So. 3d 278, 280-81 (Fla. 4th DCA 2011) (noting mere fact that mayor used a personal computer and private email address to send email did not necessarily preclude finding that email was a public record). The inquiry often turns on the record's connection to the transaction of official business. *See O'Boyle v. Town of Gulf Stream*, 257 So. 3d 1036, 1040-41 (Fla. 4th DCA 2018) (relying on a "scope of employment" analysis to determine whether text messages on mayor's personal cell phone qualified as a public record); Fla. Att'y Gen. Op. 09-19 (Apr. 23, 2009) (opining that information posted on a municipality's Facebook page bearing a connection to official municipal business would likely be subject to public records disclosure). For example, in a recent informal advisory opinion on the applicability of the public records law to elected official's personal social media pages, the Office of the Attorney General of Florida stated,

A determination of whether the list of blocked accounts is a public record requires resolution of the question of whether the "tweets" which resulted in the blocked accounts, were public records.  If the "tweets" the public official is sending are public records, then a list of blocked accounts, prepared in connection with those public records "tweets," could well be determined by a court to be a public record.

Fla. Att'y Gen. Inf. Op. to Nicolle Shalley (June 1, 2016).[3]

Thus, this Court must determine, based on the allegations set forth in the complaint, whether the Sheriff's "Robert Dentmond Grand Jury Update," is "material prepared in connection with official agency business which is intended to perpetuate, communicate or formalize knowledge of some type." Like the Supreme Court of Florida's analysis in *Shevin* and *Clearwater*, this Court's focus is on whether the post's content indicates a connection to the Sheriff's official business, not whether the Sheriff's page is itself used for official business. Although the complaint incorporates the title of the Sheriff's post and Mr. Charudattan's comment in response, this Court does not have for review the full post and its content.  However, the post's title indicates that its content concerns the Sheriff's and Sheriff's Office's official business – the criminal justice process. Notifying the community of grand jury decisions

---

[3] Although the opinion of a state attorney general on a matter of state law is not binding, the opinion is entitled to some deference, particularly where case law is otherwise silent on the issue.  *See Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1187-88 (11th Cir. 2010); *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 473 (Fla. 2005) (noting that Florida's Attorney General's opinions are not binding on Florida courts, but are generally regarded as highly persuasive authority).

seems more like an act designed to further the Sheriff's Office's official interests rather than one limited only to the Sheriff's personal interests. *See O'Boyle*, 257 So. 3d at 1042. Thus, the Sheriff's public notice to the community regarding the status of a criminal justice proceeding, in which the Sheriff's Office was likely involved, appears to be a communication of information relating to the transaction of official Sheriff's Office business. Moreover, the fact that the Sheriff made the post on her campaign page, rather than the Sheriff's Office's page, does not alter the post's otherwise official nature. *See Butler*, 68 So. 3d at 280-81. Accordingly, this Court denies the Sheriff's motion to dismiss Count II because the facts stated in the complaint are sufficient to support Mr. Charudattan's claim that the Sheriff's grand jury post is a public record subject to disclosure under Florida's public records law.

## V

Last, the Sheriff argues that the Sheriff's Office's page is a limited public forum, subject to the Sheriff's Office's social media content policy, which permits the Sheriff to remove from the Sheriff's Office's social media pages non-conforming posts and to ban users who consistently post non-conforming content. ECF No. 17, at 5-6. The Sheriff argues that Mr. Charudattan's and Mr. Hoffman's comments fell within the content policy's prohibition on posts that are "clearly off the intended topic of discussion," and therefore, the Sheriff

did not violate Plaintiffs' First Amendment rights by deleting their posts and banning their accounts. *Id.* at 6. In response, Mr. Charudattan and Mr. Hoffman argue that the factual issues that exist at this stage should prevent this Court's conclusion that the Sheriff's Office's page is a limited public forum within which the Sheriff is free to regulate non-conforming content. ECF No. 20, at 7.

Generally, the public forum analysis is used to determine whether the government's interest in limiting the use of property it owns or controls outweighs the interests of those individuals seeking to engage in expressive activity on the property. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 799-801 (1985). The starting point for public forum analysis is determining whether the space in which the speaker intends to conduct her expressive activity is an area that the government has made available, whether by intentional acts or long-standing tradition, for expressive activity, such as speech. *Id.* at 800, 802-03. Courts often rely on multiple factors in defining the forum, including the government's intent or purpose in creating or maintaining the forum; the government's practice and policy as they relate to the forum; and the forum's nature and its compatibility with the speaker's desired access and expressive activity. *Keister v. Bell*, 879 F.3d 1282, 1289 (11th Cir. 2018) (citing *Cornelius*, 473 U.S. at 801). Ultimately, the forum is

placed in one of the four categories of government fora, which determines the level of scrutiny the court will apply to the government's regulation of the forum. *Id.* at 1288.

Although the Supreme Court has recognized the importance of the Internet to the free and open exchange of ideas and views in modern society, courts have been hesitant to define social media platforms as traditional public fora. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 574 (S.D.N.Y. May 23, 2018) ("[T]he lack of historical practice is dispositive."). Rather, those courts that have decided the issue have categorized social media as either a designated or limited public forum. *See, e.g., One Wis. Now v. Kremer*, No. 17-CV-0820-WMC, 2019 WL 266292, at *6 (W.D. Wis. Jan. 18, 2019) (finding access to Twitter's interactive space is a designated public forum); *Trump*, 302 F. Supp. 3d at 575 (finding the interactive space associated with the President's tweets is a designated public forum); *Davison v. Plowman*, No. 16-CV-0180-JCC/IDD, 2017 WL 105984, at *3-4 (E.D. Va. Jan. 10, 2017) (finding county's social media content policy created a limited public forum as applied to county attorney's Facebook page). A designated public forum is one in which "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose," while a limited public forum is one in which the government

"has reserv[ed the forum] for certain groups or for the discussion of certain topics." *Walker v. Tex. Div., Sons of Confed. Vets., Inc.*, 135 S.Ct. 2239, 2250 (2015) (citations and quotations omitted). Thus, the primary difference is that a designated public forum grants general access to a selected class of speakers, while a limited public forum further restricts the topics that may be discussed by the selected class. *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224-25 (11th Cir. 2017) (citations omitted).

In this case, Mr. Charudattan and Mr. Hoffman seek a restoration of their ability to access the Sheriff's Office's page, including their ability to post comments in response to the Sheriff's posts on that page. The Sheriff's Office's content policy, as referenced in the complaint, reflects the Sheriff's intent in establishing a Facebook account and permitting limited public interaction with content posted to that Facebook page. *See* ECF No. 14, at ¶¶ 37-40 (providing excerpts from the Sheriff's Office's social media content policy and guidelines). The Sheriff has expressly disclaimed an intent to create an unlimited forum for public comment and has provided, on the Sheriff's Office's page itself, the guidelines by which the Sheriff will determine whether public comment will be permitted in response to the Sheriff's posts on the page. *Id*. Although posting on the Sheriff's Office's page is ordinarily open to any individual with a Facebook account, the Sheriff's content policy provides notice that users who

do not abide by the policy may have their posts removed from the Sheriff's Office's page and their ability to access the page revoked. *Id*. Moreover, Mr. Charudattan and Mr. Hoffman appear to assert that the Sheriff deleted their comments from and blocked their access to the Sheriff's Office's page pursuant to the policy, which indicates it is the Sheriff's Office's practice to enforce its expressed policy. *Id*. at ¶¶ 41-43. Together, these factors indicate that the Sheriff has intentionally made available to the public the comments section of posts made on the Sheriff's Office's page, subject to the restrictions set out in the content policy. Accordingly, this Court agrees with the Sheriff that, based on the allegations in the complaint, the Sheriff's Office's page is a limited public forum because the Sheriff's Office's content policy limits the topics of discussion in response to the Sheriff's posts on that page, including those individuals who can engage in that discussion. *See Davison*, 2017 WL 05984, at *3-4.

However, even in a limited public forum, the government cannot engage in viewpoint discrimination, and any restriction of speech within the forum must be reasonable considering the forum's purpose. *Barrett*, 872 F.3d at 1225; *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Once [the government] has opened a limited forum, [it] must respect the lawful boundaries it has itself set."). Here, the Sheriff argues that Mr. Charudattan's and Mr. Hoffman's comments fall within the content policy's prohibition on

posts that are "clearly off the intended topic of discussion." If the comments are not permitted by the Sheriff's reasonable and viewpoint-neutral restrictions in this limited public forum, then the Sheriff did not violate Mr. Charudattan's and Mr. Hoffman's First Amendment rights.

At this time, however, this Court cannot determine whether Mr. Charudattan's and Mr. Hoffman's comments fall within the content policy's prohibitive scope or if the comments are otherwise permitted under the content policy. This Court does not have access to each of the Sheriff's posts and each of Mr. Charudattan's and Mr. Hoffman's comments in reply to those posts.[4] Without the Sheriff's initial posts, this Court cannot determine the "intended topic of discussion," which prevents this Court from determining whether any of the comments are unrelated to those posts, and hence, whether the content policy applies. The post's headings, such as "ODMP William Arthur May Update," are vague enough that this Court agrees with Mr. Charudattan's and Mr. Hoffman's argument that further discovery my reveal that the comments are within the topic of discussion. Moreover, even with the limited information

---

[4] When considering a motion to dismiss, a court may examine documents referenced in a complaint, even if they are not physically attached, when the documents are authentic and central to the complaint. *Basson v. Mortgage Elec. Regis. Sys., Inc.*, 741 Fed. Appx. 770, 770-71 (11th Cir. 2018) (per curiam). Here, had the defendant attached the full posts and comments at issue, this Court would have been able to examine those documents in determining whether Mr. Charudattan's and Mr. Hoffman's comments fall within the prohibitive scope of the Sheriff's Office's content policy.

19

available to this Court, Mr. Hoffman's comment reviewing the Sheriff's Office raises questions of viewpoint discrimination, which would be impermissible regardless of the Sheriff's Office's page's classification as a limited public forum. *See Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. Jan. 7, 2019) (finding public forum analysis unnecessary because restriction at issue was based on viewpoint).

Accordingly, while this Court agrees with the Sheriff that the Sheriff's Office's social media content policy, as reflected in the complaint and as applied to the Sheriff's Office's page, creates a limited public forum, this Court agrees with Mr. Charudattan and Mr. Hoffman that it cannot decide, at this point, whether the Sheriff's actions pursuant to that policy are constitutional. For this reason, this Court denies the Sheriff's motion to dismiss on limited public forum grounds.

## VI

In sum, the allegations in the complaint prevent this Court from conclusively determining that the Sheriff's page is not a public record and that the Sheriff's Office's page is a limited public forum. These questions require fact-specific inquiries that may turn on information not yet present before this Court because facts revealed by later discovery may change this Court's

analysis on those issues.  However, based on the allegations in the complaint, and for the reasons stated above, the Sheriff's motion to dismiss is **DENIED**.

**SO ORDERED on February 7, 2019.**


      <u>s/Mark E. Walker</u>
      **Chief United States District Judge**

21