## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**SAVITAR CHARUDATTAN**
**and MICHALE HOFFMAN,**

     **Plaintiffs,**

**v.**                                                                      **Case No. 1:18-cv-109-AW-GRJ**

**SADIE DARNELL, as Sheriff of**
**Alachua County,**

     **Defendant.**

_____/

## <u>ORDER ON SUMMARY JUDGMENT MOTIONS</u>

This is a First Amendment case involving an elected official's Facebook pages. Plaintiffs Savitar Charudattan and Michale Hoffman claim Alachua County Sheriff Sadie Darnell violated the First Amendment by deleting their comments and banning them from certain Facebook pages. ECF No. 14 at ¶¶ 17-25, 31-34, 41-42 (Am. Comp.). Both Plaintiffs seek relief under 42 U.S.C. § 1983 (Count I), Am. Comp. ¶¶ 47-54, and Charudattan further alleges a violation of Florida's public records laws for failing to maintain and provide records related to one of the Facebook pages (Count II). Am. Compl. ¶¶ 26-29, 55-61. Each side has moved for summary judgment. *See* ECF Nos. 25 & 41.

### I.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might impact the outcome of the suit under the governing law. *Id.*

At the summary-judgment stage, a court's role is not to weigh the evidence, but to determine whether there are genuine issues for trial. *Id.* at 249. In deciding whether an issue exists for trial, a court must "view all evidence and make all reasonable inferences in favor of" the nonmoving party. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II.     Background

The pertinent facts are not disputed. Charudattan and Hoffman are private citizens who use social media to hold government agencies "accountable." ECF No. 24-1 at ¶ 5 (Charudattan Aff.); ECF No. 24-2 at ¶ 4 (Hoffman Aff.). Sheriff Darnell is the elected Sheriff of Alachua County. ECF No. 34-1 at ¶ 1 (Darnell Aff.). The Alachua County Sheriff's Office maintains a Facebook page to provide "the public with information [it] believe[s] is important or newsworthy, and in certain cases is necessary to release in the interest of public safety." ECF No. 24-2 at 13. Sheriff's Office employees moderate this page, *see* Darnell Aff. ¶ 2, and the page includes a notice saying that comments or posts violating the page's contents policy will be

removed. ECF No. 24-2 at 14-15; ECF No. 34-2 at ¶¶ 3-4 (Kutner Aff.). The page

further explains that "it is not the intent of the Alachua County Sheriff's Office to

provide a venue or forum for the expression and/or postings of unlimited comments,

videos, or links simply for the convenience of the public." ECF No. 24-2 at 14-15;

Kutner Aff. ¶¶ 3-4. The content policy forbids certain types of comments:

> 1) Obscene, vulgar, sexually explicit or otherwise offensive language/content, or links to such material;
>
> 2) Threats of any kind, particularly toward any other user or the Alachua County Sheriff's Office and its members;
>
> 3) The advocating of criminal acts or other illegal behavior;
>
> 4) Material that has the potential to compromise public safety or the safety of law enforcement personnel;
>
> 5) Remarks that disparage or discriminate against anyone based upon their sex, race, creed, religious views, national origin, sexual orientation, disability, etc.;
>
> 6) Remarks that may be considered libel, made toward any person or organization;
>
> 7) Anything that is clearly off the intended topic of discussion;
>
> 8) Information that is clearly inaccurate, unverified, and purposefully designed to mislead others;
>
> 9) Campaigning of any type, political or otherwise;
>
> 10) Links to other third-party sites or advertisements;
>
> 11) Any form of solicitation; and
>
> 12) Any other language/material deemed inappropriate or offensive.

ECF No. 24-2 at 14-15; Kutner Aff. ¶ 3. The policy further warns that "[t]he Alachua County Sheriff's Office also reserves the right to block access to our social media pages to any user who consistently violates these guidelines, without prior warning or notice." ECF No. 24-2 at 14-15; Kutner Aff. ¶ 3.

Separate from the Alachua County Sheriff's page, Sheriff Darnell has her own Facebook page (the "Campaign Page"). Darnell Aff. ¶ 3. While running for reelection, she maintained it as the "Re-elect Sadie Darnell" page, Darnell Aff. ¶ 3, but its name changed to the "Sheriff Sadie Darnell" page after her 2016 reelection. ECF No. 35 at 25; Am. Compl. ¶ 14. Two Sheriff's Office employees—Brendon Kutner and Nicolas Iannucci—moderated the comments on this page during their personal time. Kutner Aff. ¶ 9; ECF No. 34-3 ¶ 3 (Iannucci Aff.).

Sheriff Darnell used the Campaign Page to highlight her experience and to explain what she would do if reelected. Darnell Aff. ¶ 4. The page included a disclaimer indicating it was a "[p]olitical advertisement paid for and approved by Sadie Darnell, Democrat, for Alachua County Sheriff," *id.* ¶ 5, and it featured pictures and material about the campaign, the sheriff's race, endorsements, and Sheriff Darnell's philosophy and accomplishments. ECF No. 34-2 at 6-21. After her 2016 reelection, Sheriff Darnell did not authorize or make any further posts on this page. Darnell Aff. ¶ 12.

4

In September 2016, comments Charudattan and Hoffman posted on the Alachua County Sheriff's page were deleted. Charudattan Aff. ¶¶ 7-14; Hoffman Aff. ¶¶ 7-11, 13.[1] Also in September 2016, Charudattan posted a comment on the Campaign page that was later deleted. Charudattan Aff. ¶¶ 10-11. Charudattan additionally alleges that his "Stop Traffic Fraud!" account has been blocked from posting on the Campaign page. *Id*. ¶ 14.

## III.   Analysis

Charudattan and Hoffman sued Sheriff Darnell under § 1983, alleging violations of their First and Fourteenth Amendment rights. Am. Compl. ¶¶ 47-54. Their suit is against Sheriff Darnell in her official capacity,[2] meaning the case is tantamount to a suit against the government entity she represents—Alachua County. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty*., 402 F.3d 1092, 1115

---

[1] Charudattan used his "Stop Traffic Fraud!" account to post comments, and Hoffman posed under the name "Mike Tingler." Charudattan Aff. ¶¶ 7, 10, 12; Hoffman Aff. ¶ 4. Hoffman claims he was blocked from posting on the page. Hoffman Aff. ¶ 14. Sheriff Darnell claims Hoffman was not blocked from posting or accessing the page. Kutner Aff. ¶ 4. Regardless of which side is right on that point, the outcome would be the same. Therefore, this dispute is not material. *See infra* p. 11.

[2] "Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Eleventh Circuit has "repeatedly held that Florida's sheriffs are not arms of the state." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005). And, at any rate, Sheriff Darnell has not raised Eleventh Amendment immunity.

(11th Cir. 2005) (explaining a suit against a county sheriff "is effectively an action against" the county).[3]

A municipality can be liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). A municipality is not liable simply because it employs a tortfeasor. *See id*. Therefore, a plaintiff must prove: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Charudattan and Hoffman argue Sheriff Darnell violated their free speech rights by deleting their comments and blocking them from the Alachua County Sheriff's page and the Campaign Page. The Court will consider the alleged violations relating to each Facebook page separately.

### A.    The Campaign Page

No § 1983 claim can succeed without some violation of rights committed "under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). "[M]erely private conduct, no matter how discriminatory or wrongful," is not actionable. *Id*. (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

---

[3] The parties agree that Sheriff Darnell is the final policy-maker for the Alachua County Sheriff's Office. ECF No. 41 at 12 n.4; ECF No. 25 at 11.

6

Charudattan claims Sheriff Darnell acted under color of law when the page deleted a comment he posted about "constitutional training standards"[4] and blocked Charudattan's "Stop Traffic Fraud!" account, precluding further posts. *See* ECF No. 25 at 14; Am. Compl. ¶¶ 20, 23-24; Charudattan Aff. ¶¶ 10, 14. Sheriff Darnell, on the other hand, contends that the Campaign Page was purely private, that no action as to that page was "under color of state law." ECF No. 35 at 23-29; ECF No. 41 at 25-31.

The distinction between public and private activity is not a "simple line," and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).[5] Sheriff Darnell argues that the allegations surrounding the Campaign Page do not constitute state action because the page is privately owned,

---

[4] Unlike the other deleted comments Plaintiffs protest, Charudattan has not provided the Court with this comment. *See* ECF No. 24-1 at ¶¶ 10-11.

[5] While *Brentwood* focuses on "state action," it is nevertheless controlling on the Court's inquiry into action taken "under color of law." *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for § 1983 purposes."); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982).

does not conduct official business, and was used as a political advertisement for the reelection campaign. ECF No. 35 at 23-24. Plaintiffs argue that the Campaign Page constitutes a "government page" because it was re-titled the "Sheriff Sadie Darnell" page after the reelection and because off-duty deputies monitored the comments. ECF No. 39 at 6-7; ECF No. 25 at 13-15.[6] Neither side contends there is any disputed issue of material fact on this point.

Plaintiffs rely on *Attwood v. Clemons* to argue that because the Campaign Page was re-titled the "Sheriff Sadie Darnell" page and was used to communicate with the public, there is a sufficient nexus with the state to support a state action finding. *See* ECF No. 25 at 14. In *Attwood*, the district court found a plaintiff had pleaded enough facts to show a state nexus and survive a motion to dismiss when a public official blocked him from the official's Facebook and Twitter accounts. The court explained that the official's Facebook account was titled "State Representative Chuck Clemons District 21" and that "[s]uch a title is indicative of a state representative's official account—not a politician's private campaign account." *Attwood v. Clemons*, No. 1:18-cv-38-MW-GRB, ECF No. 30, at 8 (N.D. Fla. May

---

[6] Plaintiffs also argue that the page "clearly served as a means to communicate with the public regarding the Sheriff's official activities," ECF No. 25 at 14, but they have not cited any evidence to support this conclusion. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

20, 2018). The court additionally reasoned that on at least one occasion, the public official used his social media account as an outlet for official statements. *Id.*

This case is not like *Attwood*. Here, the alleged violation occurred when the account was titled "Re-elect Sadie Darnell"; the account was changed to the "Sheriff Sadie Darnell" page only after her reelection. ECF No. 35 at 25; ECF No. 14 at ¶ 14. Further, in *Attwood*, the state official used his social media account "as an outlet for official statements." *Attwood*, No. 1:18-cv-38-MW-GRB, at 8. In this case, the Campaign Page featured posts about Sheriff Darnell's reelection campaign— including pictures of campaign events, endorsements, and statements about her law enforcement philosophy and experience. ECF No. 34-2 at 6-22. Plaintiffs have highlighted one post on the Campaign Page noting the findings of the grand jury, but that post included campaign-related statements about the candidate's priorities as sheriff. ECF No. 24-1 at 38. The post was not an official notification from the Alachua County Sheriff's Office. (Incidentally, the Alachua County Sheriff's page formally issued a press release to announce the grand jury findings. Darnell Aff. ¶ 8.)

Plaintiffs additionally rely on *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019), as amended (Jan. 9, 2019). ECF No. 25 at 14. In *Davison*, the Fourth Circuit found that the chair of a county board of supervisors' Facebook page bore a "sufficiently close nexus" with the state to come within § 1983's color-of-law requirement. *Davidson*, 912 F.3d at 680. The chair created and used the Facebook

page "to further her duties as a municipal official"—using the page "as a tool of governance," and an outlet to provide and solicit information about official activities and policy matters. *Id.* (marks and citation omitted). The court highlighted that the page included the chair's title, was categorized as "a government official" page, listed official municipal contact information, and posted on behalf of a municipal body. *Id.* at 680-81. Importantly, the Court found that "[a] private citizen could not have created and used the Chair's Facebook Page in such a manner." *Id.* at 681 (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 526 (4th Cir. 2003)).

*Davison* is distinguishable in several ways. Unlike in *Davison*, Sheriff Darnell created and administered the page for her private reelection campaign. *See id;* Darnell Aff. ¶¶ 3-5. Additionally, unlike in *Davison*, the Campaign Page did not include Sheriff Darnell's official title at the time of the alleged unconstitutional action. *See Davidson*, 912 F.3d at 681; Darnell Aff. ¶¶ 3-7; ECF No. 24-1 at 32. And unlike in *Davison*, the Campaign Page was not categorized as that of a "government official," did not include her official government contact information, and did not submit posts on behalf of the Alachua County Sheriff's Office. *See Davidson*, 912 F.3d at 680-81; Darnell Aff. ¶ 8; ECF No. 24-1 at 32. Finally, unlike in *Davison*, the challenged actions here occurred in the course of a reelection campaign. *See id.* at 681; *see also Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("In general, section 1983 is not implicated unless a state actor's conduct occurs in the course of

performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office."). Indeed, there were no new posts after the reelection campaign ended. Darnell Aff. ¶ 12.

Finally, Plaintiffs argue that because off-duty deputies curated the page, "[o]ne must wonder how free [the deputies] felt to decline to 'volunteer.'" ECF No. 39 at 6. The argument is that the so-called volunteers were really acting on behalf of the State. But the Plaintiffs produced no record evidence to support the idea that the deputies' actions were anything other than voluntary participants in the reelection effort on their own time.

"Not all acts by state employees are acts under color of law . . . and acts of officers in the ambit of their personal pursuits are not done under color of law." *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (marks and citations omitted). "A defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). In these cases, the dispositive issue is "whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual." *Id.* Here, the conduct at issue occurred when the Campaign Page was a reelection advertisement paid for by Sadie Darnell and operated by individuals

11

not acting in any official capacity. Based on the undisputed summary-judgment record, the Court concludes there was no state action. So as to the Campaign Page, there can be no First Amendment claim. *See also Fehrenbach v. Zeldin*, No. CV175282JFBARL, 2019 WL 1322619, at \*5 (E.D.N.Y. Feb. 6, 2019), report and recommendation adopted, No. 17CV5282JFBARL, 2019 WL 1320280 (E.D.N.Y. Mar. 21, 2019) ("[Plaintiff's] January posting was made to Congressman Zeldin's campaign page, and thus, the conduct surrounding the alleged removal of the January 6 post amounts to private action.").

### B.   Alachua County Sheriff's Facebook Page

Unlike the Campaign Page, the Alachua County Sheriff's page is an official page. Actions the office takes with respect to the Alachua County Sheriff's page are not merely private actions, so the claims are analyzed differently.

In an earlier order, the Court determined that the Alachua County Sheriff's page is a limited public forum. ECF No. 27 at 18.[7] The parties have not asked the Court to revisit that conclusion, and both sides have framed their arguments based on an assumption that the page is, indeed, a limited public forum. *See* ECF No. 35 at 20-23; ECF No. 39 at 4-6; ECF No. 41 at 20-25; ECF No. 45 at 2-5; ECF No. 50 at 2-6. Therefore, for the purposes of this order, the Court will assume the Alachua County Sheriff's page is a limited public forum, which is property the government

---

[7] Later, the case was reassigned on June 26, 2019. ECF No. 52.

has opened for "use by certain groups or dedicated solely to the discussion of certain subjects." *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (internal quotation marks and citation omitted). *But see Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1010-13 (E.D. Ky. 2018) (determining that a governor's Facebook and Twitter accounts are government speech).

### 1.    Comments Deleted Pursuant to the Facebook Policy

Plaintiffs' deleted comments fall into two categories: Those deleted pursuant to the Sheriff's Office's Facebook policy and those deleted *not* pursuant to the Sheriff's Office's Facebook policy. The Court first considers those comments deleted pursuant to the official policy.

In a limited public forum, restrictions on speech must be "'reasonable in light of the purpose served by the forum' . . . [and must not] discriminate against speech on the basis of its viewpoint." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 804-06 (1985)) (citations omitted); *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) ("Any restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral."). Those restrictions, though, can include reserving the forum "for certain groups or for the discussion of certain topics." *Rosenberger*, 515 U.S. at 820; *accord Perry Educ. Ass'n v. Perry*

13

*Local Educators' Ass'n*, 460 U.S. 37, 46 n.7 (1983) (noting that "[a] public forum may be created for a limited purpose such as . . . for the discussion of certain subjects").

"Once it has opened a limited forum, however, the State must respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829. In defining limited public forum standards, the Supreme Court has made the distinction between "content discrimination, which may be permissible if it preserves the purposes of that limited forum, and . . . viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations." *Id.* at 830; *see Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878 (11th Cir. 2007). The Court has acknowledged the close relationship between content and viewpoint discrimination, labeling the latter as "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. Regardless, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

The official policy precludes comments that are "clearly off the intended topic of discussion." ECF No. 24-2 at 14. The Court earlier held that the content policy's prohibition on off-topic posts was "reasonable and viewpoint-neutral"—and that if

the deleted comments fell within that limitation, then Plaintiffs' free speech rights were not violated. *See* ECF No. 27 at 18-19. The Court maintains that conclusion.

The policy also prohibits comments that include "[l]inks to other third-party sites or advertisements." ECF No. 24-2 at 14. Plaintiffs do not dispute that the no-link policy is facially both reasonable and viewpoint neutral. *See* ECF No. 39 at 5.[8]

a.   Charudattan's September 11 Update Comment

Plaintiffs object to the removal of a comment Charudattan made on the Alachua County Sheriff's page in response to a post commemorating September 11, 2001. *See* ECF No. 24-1 at 10. The Alachua County Sheriff's post featured images from September 11, including a picture of the World Trade Center Towers collapsing. ECF No. 24-1 at 10. And it contained an image that read, in part: "Through blurred eyes we find the strength and courage to soar beyond the moment. We look to the future knowing we can never forget the past. God Bless America." ECF No. 24-1 at 10.

Charudattan's comment read: "So Lt. Richard Lalonde still hasn't received any training on how not to violate 1st Amendment Rights. What is wrong with you

---

[8] In their summary judgment motion, Plaintiffs also raise Alachua County Sheriff's Office directive #945 – Social Media as a potential basis for liability. ECF No. 25 at 7. Plaintiffs highlight that the directive says "employees will be obligated to remove any posting or material contributed by others that reflects negatively upon the ACSO." ECF No. 25 at 7. That portion of the directive, however, deals with employees' personal social media accounts, which are not at issue in this case. *See* ECF No. 24-3 at 3-4.

people at this agency? Interfering with cameras and chilling speech, regardless of the content, is disgraceful and Unconstitutional. You all just don't learn!" Charudattan Aff. ¶ 8; ECF No. 24-1 at 8; *see* ECF No 41 at 21.

Plaintiffs argue the comment was tied to September 11 because it was related to the arrest of a journalist who allegedly asked bystanders to comment on a video about the fall of World Trade Center "Building 7." ECF No. 39 at 4. The claimed connection, however, is not related to commemorating the September 11 attack, which was the intended topic of discussion. Kutner Aff. ¶ 6. The comment is "clearly off the intended topic of discussion," and therefore in conflict with the agency's content restriction. *See* ECF No. 24-2 at 14.

On the same Alachua County Sheriff's September 11 Facebook post, Charudattan added a comment reading: "Deleting Public Records is illegal!" which included a link to an external website. ECF No. 24-1 at 10. This post was not only off-topic, but also violated the policy restricting comments that include "[l]inks to other third-party sites." ECF No. 24-2 at 14.

b.    <u>Charudattan's ODMP William Arthur May Update Comment</u>

Plaintiffs next object to the deletion of Charudattan's comment in response to a post about an old newspaper article. The Alachua County Sheriff's post talked about the discovery of the 1940 article, which covered the shooting death of a deputy sheriff. ECF No. 24-1 at 14. The post read in part:

16

> Although we are sad that we must add another name to the list of
> Deputies here at ACSO who have made the ultimate sacrifice in service
> to [our] community, we are grateful for the hard work and effort shown
> by Lt. Behl and Lt. Richman which will allow the memory of this local
> hero to be honored properly! #HeroesAreNeverForgotten #RIP

ECF No. 24-1 at 14.

Charudattan's comment in response read: "Wow, 1934. Maybe 82 years from now Robert Dentmond will receive a formal apology post." ECF No. 24-1 at 14.

Plaintiffs argue that the comment was related to the topic of discussion because the "unifying theme was ACSO's slowness to discover wrongful shooting deaths." ECF No. 39 at 5. On its face, however, the comment was unrelated to the original post's topic and violated the Alachua County Sheriff's Facebook policy. *See* ECF No. 24-2 at 14.

c.   Hoffman's YouTube Comments

Hoffman additionally objects to the removal of more than ten comments he posted, all of which contained a link to a video claiming to show Alachua County Sheriff's deputies detaining him. Hoffman Aff. ¶¶ 10-11; *see* ECF No. 24-2 at 9-10.

Deleting these comments was consistent with the policy restricting comments that include "[l]inks to other third-party sites." ECF No. 24-2 at 14.

d.   <u>Hoffman's Blocking</u>

Finally, Hoffman claims he was banned from posting on the Alachua County Sheriff's page. *See* Hoffman Aff. at ¶ 12.[9] Sheriff Darnell says that Hoffman was never banned from posting or accessing the Alachua County Sheriff's page. ECF No. 34-2 ¶ 4. Neither party acknowledges the dispute of fact.[10] The fact, however, is not material. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

As the Court earlier determined, the Alachua County Sheriff's page is typically open to any individual with a Facebook account; however, the content policy provides that users who violate the policy may have their ability to access the page revoked. ECF No. 27 at 17-18; ECF No. 24-2 at 15; Kutner Aff. ¶ 3 (explaining the content policy states "[t]he Alachua County Sheriff's Office also reserves the right to block access to our social media pages to any user who consistently violates these guidelines, without prior warning or notice").

---

[9] Charudattan also claims his Stop Traffic Fraud! account has been banned from posting on the Alachua County Sheriff's page. Am. Compl. ¶ 25. He has not, however, provided any record evidence to support this.

[10] Additionally, neither party offered a legal argument to resolve the blocking issue.

In a limited public forum, the posting policy must be only "reasonable and viewpoint neutral." *Keister v. Bell*, 879 F.3d 1282, 1289 (11th Cir.), *cert. denied*, 139 S. Ct. 208 (2018); *Bloedorn*, 631 F.3d at 1231 (explaining that in "limited public fora, any time, place, and manner restrictions made on expressive activity need only be viewpoint neutral and reasonable; and the restriction need not 'be the most reasonable or the only reasonable limitation'" (quoting *Cornelius*, 473 U.S. at 808). Additionally, "governments may exclude a speaker 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" *Keister*, 879 F.3d at 1289 (quoting *Cornelius*, 473 U.S. at 806).

The policy allowing the Sheriff's Office to block users who repeatedly violate the content policy is reasonable in light of the purpose of the forum, which is to provide "the public with information [the Alachua County Sheriff's Office] believe[s] is important or newsworthy, and in certain cases is necessary to release in the interest of public safety." ECF No. 24-2 at 13. The Eleventh Circuit has recognized, under scrutiny more exacting than that applied in the limited public forum context, that a person may be excluded from a public forum when the person is disruptive. *See Jones v. Heyman*, 888 F.2d 1328, 1331-32 (11th Cir. 1989) (finding that the exclusion of a disruptive person from a designated public forum was a reasonable time, place, and manner regulation that did not violate his constitutional rights). Moreover, the policy is facially viewpoint neutral as it does not target any

perspective, ideology, or opinion, but rather applies to any repeat violator. *See Sheets v. City of Punta Gorda*, No. 219CV484FTM38MRM, 2019 WL 6251361, at *4 (M.D. Fla. Nov. 23, 2019).

Therefore, even assuming Hoffman is correct—assuming his account was blocked from posting—his claim would nevertheless fail. Hoffman's own evidence demonstrates he was a repeat policy violator. *See* Hoffman Aff. ¶ 8 (explaining Hoffman "posted a link to the video . . . to approximately [ten] other already posted comments"); ¶ 11 (adding Hoffman "left several other comments with only the detainment video link on the Alachua County Sheriff's Office Facebook page"). Finally, there is nothing to prevent Hoffman from creating a different Facebook account and posting on the Alachua County Sheriff's page. *See generally* Charudattan Aff. ¶ 14; ECF No. 24-1 at 20.

### 2.   Comments Deleted Not Pursuant to the Policy

Two deleted comments Hoffman says violated his free speech rights were not clearly deleted pursuant to the official policy.

#### a.   One-star Review

Hoffman objects to the removal of a critical one-star review he posted on the Alachua County Sheriff's page. Hoffman Aff. ¶¶ 7, 13. Sheriff Darnell argues that the review was not singled out for deletion, but rather the Alachua County Sheriff's Office turned off the entire review function on its Facebook page, preventing all

users from leaving reviews—both positive and negative. Kutner Aff. at ¶ 8; *see* Hoffman Aff. at ¶ 13. Hoffman argues that the entire section's deletion was in retaliation for his negative post. ECF No. 39 at 2-3. Hoffman, however, does not direct the Court to any evidence to support his retaliation argument, nor did he assert a claim for retaliation in his Amended Complaint. *See* ECF No. 14.

  b. <u>Link-less Comment</u>

   Hoffman also argues that the Alachua County Sheriff's page deleted a comment he posted that read "[m]aybe you should investigate your Deputies [sic] criminal actions. Here is video proof." ECF No. 24-1 at 23. Defendants argue that Hoffman's subsequent post included a link, that these comments were intended to be read together, and that the link violated the comment policy. ECF No. 41 at 24-25.

  c. *<u>Monell</u>* <u>Liability</u>

   Assuming, without holding, that these two deletions represent constitutional violations, Hoffman still would need to establish the government's liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers . . . ."). To establish liability against a local government, Hoffman must show "that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and . . . that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289; *accord Monell*, 436 U.S. at 694-95.

Hoffman has not pointed to an official policy that caused Facebook-policy-compliant comments to be deleted. *See Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). He therefore "must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the moving force [behind] the constitutional violation.'" *Id.* at 1330 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (last alteration in original)).

> To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy.

*Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

So Hoffman must show that employees engaged in a practice of viewpoint discrimination that was "so well-settled and pervasive that it assume[d] the force of law." *Denno v. Sch. Bd. of Volusia Cty.*, 218 F.3d 1267, 1277 (11th Cir. 2000). While Plaintiffs dispute all of the deleted comments, only two of Hoffman's deleted posts did not clearly violate the limited public forum content policy. This is insufficient to prove a "persistent and wide-spread practice" of viewpoint discrimination. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional

deprivation."); *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008) ("Two incidents, occurring approximately thirteen months apart, are insufficient to establish a custom.").

Hoffman also argues that the county is liable because Sheriff Darnell failed to correct her employees' claimed constitutionally offensive actions. *See* ECF No. 25 at 10, 13. The argument is that a failure to correct can rise to the level of a custom of policy, "if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987); *see* ECF No. 25 at 10.

Plaintiffs say that Sheriff Darnell was on notice about the alleged constitutional violations because Hoffman called Sheriff Darnell on September 21, 2016, in part, to complain about his deleted comments and his alleged banning. ECF No. 25 at 6; Hoffman Aff. ¶ 12; *see* ECF 34 at 1. According to Hoffman, after he notified Sheriff Darnell about the deletions, more of his comments and his one-star review were deleted from the page. Hoffman Aff. ¶¶ 12-13.[11]

Hoffman's phone call to Sheriff Darnell is not enough to show that the county was aware of the claimed misconduct and failed to act. Hoffman has not demonstrated that his complaint had any merit. *See Brooks*, 813 F.2d at 1193. In the

---

[11] Sheriff Darnell disputes that comments were deleted after the phone call, but has not directed the court to any record evidence. For purposes of this motion, the Court accepts Hoffman's assertion that the call came first.

call, *see* ECF 34 at 1, Hoffman complained of other unnamed users' deleted posts and said that he has had posts deleted and been blocked for "simply" posting a video. *See* ECF 34 at 1. Posting third-party links violates the content policy, and without more, this is insufficient to show a deliberate indifference or tacit authorization of misconduct sufficient "to rise to the level of a 'custom or policy.'" *Brooks*, 813 F.2d at 1193; *cf. Depew*, 787 F.2d at 1499 (finding a city liable under § 1983 for use of excessive force by police when the city had police department rules, those rules were violated on "numerous occasions," the city knew of the violations but did not take remedial action, and there were "several incidents involving the use of unreasonable and excessive force by police officers").

### 3.       Selective Enforcement

Finally, Plaintiffs argue that Sheriff Darnell is not entitled to summary judgment because the Alachua County Sheriff's Office is selectively enforcing the social media policy—applying the restrictions against Plaintiffs but not against users who post viewpoints "more friendly" to Sheriff Darnell. ECF No. 45 at 3. Sheriff Darnell argues that the evidence Plaintiffs have supplied to support this argument— eight[12] comments that Plaintiffs claim violate the social media policy but were not

---

[12] Of the eight selected comments Plaintiffs cite, just five violate the social media policy. Three of Plaintiffs' selected comments do not:

1) Plaintiffs' Exhibit 1 did not violate the policy. ECF No. 44 at 6. Here, a commenter replied to a Sheriff's Office post that announced the capture of

deleted—do not support the inference Plaintiffs demand, and further, would still not satisfy *Monell*.[13] ECF No. 50 at 2-7.

Of the five posts Plaintiffs highlight that also violated the social media policy in some form but were not removed, only one is clearly "friendly" to Sheriff Darnell. *See* ECF No. 44 at 14; ECF No. 45 at 4. One of the posts Plaintiffs cite as "more friendly" to the Sheriff's Office accuses the officers of "committing homicide on the [C]onstitution." ECF No. 44 at 16; ECF No. 45 at 4.

More importantly, the examples Plaintiffs cite were posted over the course of more than two years. ECF No. 44 ¶¶ 4-8. To succeed, Plaintiffs would need to demonstrate "a persistent and wide-spread practice" that could support municipal

———————————

two burglary suspects by asking if they had found a bike in the suspects' possession. The comment was not off topic.

2) Plaintiffs' Exhibit 4 features a comment from a Facebook user's personal Facebook, not the Alachua County Sheriff's page. ECF No. 44 at 12.

3) Plaintiffs' Exhibit 5 features a comment reading: "Thanks to all at the Alachua County Sheriff's office." ECF No. 44 at 14. The post does not appear to violate the content policy, and Plaintiffs present no contrary argument. *See* ECF No. 45 at 4.

[13] Plaintiffs also argue that the no-links policy was not uniformly enforced because some of the Sheriff's Office's own posts included links. *See* ECF No. 39 at 6. The content policy, however, applies to members of the public, not the agency itself. *See* ECF No. 24-2 at 13-15. Plaintiffs also argue that that "[a] random scroll through the agency web site shows any number of third-party links not only by the Sheriff's personnel, but also by ordinary citizens whose posts are not negative about ACSO." ECF No. 39 at 6. Other than the examples referenced in this order, however, Plaintiffs did not supply the Court with any additional evidence to support this assertion.

liability. *See Depew*, 787 F.2d at 1499. Five posts over the course of more than two years is insufficient to establish municipal liability based on an informal policy or custom. *See id*. ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents . . . cannot support a pattern of illegality in one of the Nation's largest cities and police forces."); *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) ("Certainly, these four isolated shootings [over a nine-month span] in 2012 cannot establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." (marks and citations omitted)); *Prieto v. Metro. Dade Cty.*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989) ("[T]hese four isolated incidents involving only [the plaintiff] fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom.").

## C.    Count II

Since the Court has dismissed the § 1983 claim against Sheriff Darnell, no federal claims remain. *See* Am. Compl. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—. . . point toward declining to exercise jurisdiction over the remaining state-

law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 n.7 (1988). The Court therefore will exercise its discretion and decline to assert jurisdiction over the outstanding state-law claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

## IV.   Conclusion

Sheriff Darnell's Motion for Summary Judgment (ECF No. 41) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motion for Summary Judgment (ECF No. 25) is DENIED.

The Clerk shall enter a judgment that says, "As to Count I, Summary Final Judgment is entered in Defendant's favor, and Plaintiffs shall take nothing. Count I is dismissed on the merits. Count II is dismissed without prejudice because the Court will not exercise supplemental jurisdiction over this state-law claim." The Clerk will close the file.

SO ORDERED on January 7, 2020.

s/ *Allen Winsor*
United States District Judge