**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 29, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-10519-JJ
Case Style: Savitar Charudattan, et al v. Sadie Darnell
District Court Docket No: 1:18-cv-00109-AW-GRJ

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10519
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-00109-AW-GRJ

SAVITAR CHARUDATTAN,

                              Plaintiff - Appellant,

versus

SADIE DARNELL,
as sheriff of Alachua County,

                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 29, 2020)

Before GRANT, LUCK, and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff/Appellant, Savitar Charudattan ("Charudattan"), appeals the district court's order granting summary judgment to Defendant/Appellee, Sheriff Sadie Darnell ("Sheriff Darnell"), on Charudattan's claim that Sheriff Darnell violated the First Amendment by deleting his comments and banning him from certain Facebook pages. Charudattan sought relief under 42 U.S.C. § 1983 and Florida state law's open records statute. After reading the parties' briefs and reviewing the record, we affirm the district court's order granting summary judgment to Sheriff Darnell.

## I.

Charudattan, along with Michale Hoffman ("Hoffman")[1], are private citizens who utilize social media to monitor government agencies and hold them accountable. Both investigate various government agencies' infringement on individuals' civil rights and use online social media, such as Facebook, to report on such matters. Charudattan's accountability Facebook page is titled "Stop Traffic Fraud." Sheriff Darnell is the elected Sheriff of Alachua County, Florida.

The Sheriff's Office maintains a Facebook page that provides the public with important or newsworthy information and is moderated by Sheriff's Office employees. The Facebook page includes a notice that comments or posts violating

---

[1] Hoffman did not appeal the district court's order granting summary judgment to Sheriff Darnell, so his Facebook page and posts are not relevant.

the page's contents policy will be removed. The contents policy further notes that it is not intended as a venue or forum for the expression and/or postings of unlimited comments, videos, or links simply for the convenience of the public. The contents policy forbids, in part, numerous types of comments, such as ones that are obscene, vulgar, sexually explicit, threatening in nature, advocate criminal behavior, discriminate, or include clearly inaccurate information. Pertinent to the present case are forbidden comments that are unrelated to the intended topic of discussion or provide links to other third-party sites. (R. Doc. No. 24-2 at 14-15.) The contents policy further warns that the Sheriff's Office has the right, with or without notice, to block access to its social media pages to any user who consistently violates the policy guidelines.

Apart from the Sheriff's Office page, Sheriff Darnell has her own Facebook page. While running for reelection in 2016, she maintained this account as the "Re-elect Sadie Darnell" page ("Campaign Page"), but after her reelection, she renamed the account the "Sheriff Sadie Darnell" page. Two Sheriff's Office employees moderated the comments on this page during their personal time. Sheriff Darnell used the Campaign Page to highlight her experience and to explain her plans for the Sheriff's Office if she won reelection. The page included a disclaimer indicating it was a political advertisement paid for and approved by Sadie Darnell, Democrat, for Alachua County Sheriff, and it contained material about the campaign, the sheriff's

3

race, endorsements, and Sheriff Darnell's philosophy and accomplishments. (R. Doc. No. 34-1, ¶ 5; Doc. 34-2 at 6-21.) After her 2016 reelection, Sheriff Darnell did not authorize or make any further posts on the Campaign Page.

## II.

Charudattan and Hoffman sued Sheriff Darnell in her official capacity under 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights. They alleged that Sheriff Darnell violated their free speech rights by deleting their comments and blocking them from the Sheriff's Office page and the Campaign Page on Facebook. Charudattan also raised a state law claim for violation of public records law. After the parties filed numerous motions and responses, the district court entered its order granting summary judgment to Sheriff Darnell. The district court found an absence of a custom or practice of permitting Facebook-policy compliant comments to be deleted, and the district court concluded that no custom or practice was the motivating force behind the alleged constitutional violation. Thus, the district court concluded that there was no constitutional violation. Furthermore, the district court declined to exercise pendent jurisdiction over Charudattan's state law claim. Charudattan filed a timely appeal.

We review *de novo* the district court's order granting summary judgment. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239

(11h Cir. 2018). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a). The court's role at the summary judgment stage is to determine whether there are genuine issues for trial. In deciding whether an issue exists for trial, a court must "view all evidence and make all reasonable inferences in favor of" the nonmoving party. *Fort Lauderdale Food Not Bombs*, 901 F.3d at 1239–40.

### III.

Charudattan asserts on appeal that the district court erred in granting summary judgment to Sheriff Darnell because Sheriff Darnell, a state actor, had a policy, practice, or custom that was the motivating force behind the alleged violation of his First Amendment rights. He claims that Sheriff Darnell's removal of his comments on the Sheriff's Office Facebook page and the Campaign Page was violative of his right to free speech. We will consider the alleged violations relating to each Facebook page, in turn.

A. *Sheriff's Office Facebook page*

Charudattan raised a 42 U.S.C. § 1983 claim against Sheriff Darnell for an alleged violation of his First and Fourteenth Amendment rights. To succeed on this claim Charudattan must show that his constitutional right was violated, the agency had a custom or policy that constituted deliberate indifference to that right,

and the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). He must present evidence that Sheriff Darnell had a policy, custom, practice, or procedure addressing the removal of Facebook posts that was not viewpoint neutral and was the moving force behind the alleged constitutional violation. *See id. See also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) (holding that a governmental entity is not liable for its employee's action under § 1983 based on the theory of *respondeat superior* and cannot be liable solely because it employs a tortfeasor).

In a prior order, the district court determined that the Sheriff's Office Facebook page was a limited public forum, and no party argues to the contrary on appeal. A limited public forum is property the government opens for "use by certain groups or dedicated solely to the discussion of certain subjects," and in which the government "may impose restrictions on speech that are reasonable and viewpoint-neutral." *See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11, 130 S. Ct. 2971, 2984 n.11 (2010) (internal quotation marks and citation omitted). In a limited public forum, restrictions on speech must be "reasonable in light of the purpose served by the forum" and must not "discriminate against speech on the basis of its viewpoint." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829,

115 S. Ct. 2510, 2517 (1995) (internal quotation marks omitted).  In other words, "[a]ny restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011).  The Supreme Court has noted the distinction between content discrimination, "which may be permissible if it preserves the purposes of the limited forum," and viewpoint discrimination, "which is presumed impermissible when directed against speech otherwise within the forum's limitations," labeling the latter as "an egregious form of content discrimination."  *Rosenberger*, 515 U.S. at 829–30, 115 S. Ct. at 2517.

  The Sheriff's Office Facebook page policy precludes comments that are "clearly off the intended topic of discussion," and also precludes comments that include "[l]inks to other third-party sites or advertisements."  (R. Doc. 24-2 at 14, 18–19.)  Prior to the summary judgment order, the district court determined that the contents use policy prohibiting off-topic posts and links to other third-party sites or advertisements was reasonable and viewpoint-neutral.  (R. Doc. 27.)  Charudattan does not challenge this finding on appeal.

  Charudattan does challenge the removal of comments he made in response to a post commemorating September 11, 2001.  The Sheriff's Office Facebook post featured images from September 11 and contained an image that read, in part: "Through blurred eyes we find the strength and courage to soar beyond the

7

moment. We look to the future knowing we can never forget the past. God Bless America." (R. Doc. 24-1 at 10.) Charudattan's response to the post read as follows: "So Lt. Richard Lalonde still hasn't received any training on how not to violate 1st Amendment Rights. What is wrong with you people at this agency? Interfering with cameras and chilling speech, regardless of the content, is disgraceful and Unconstitutional. You all just don't learn!" (*Id.* at 8.) The Lieutenant mentioned was involved in a prior arrest of Charudattan in 2011. Charudattan explains that his response was related to September 11 because it referenced another user's posted video that recorded the arrest of a journalist who allegedly asked bystanders to comment on a video about the fall of the World Trade Center.

Based on our review of the record, we conclude that the district court correctly found this post to be off-topic and subject to removal. Charudattan's comment, on its face, was relevant to the topics of Lieutenant Richard Lalonde and agency training, which are completely unrelated to the topic of September 11 remembrances. We agree with the district court that the comment violated the contents use policy, and Charudattan cannot show that the officers removed his comment pursuant to a policy or custom initiated by Sheriff Darnell. Accordingly, we conclude that there was no constitutional violation with respect to the removal of this comment.

Charudattan also challenges the removal of a comment he made on the Sheriff's Office Facebook page "Officer Down Memorial Page." The agency posted an article from 1940 that discussed the death of a deputy sheriff killed in the line of duty. Charudattan commented, "Wow. 1934. Maybe 82 years from now Robert Dentmond will receive a formal apology post." (R. Doc. 24-1 at 14.) The Sheriff's Office post indicated that it allowed only comments that respected or honored deceased law enforcement officers. Charudattan's comment referenced a needless death allegedly caused by Alachua County Sheriff's Officers. Charudattan suggests that his comment was intended as a criticism of the Alachua County Sheriff's Office's delay in discovering the deputy's death. However, the comment, on its face, does not make such criticism clear. We agree with the district court that the comment was clearly off-topic, and its removal was not initiated pursuant to any custom or policy established by Sheriff Darnell.

Thus, based on the record evidence, we conclude that Charudattan cannot establish a causal link between any policy established by Sheriff Darnell and his alleged constitutional deprivation. Charudattan had to show that the Sheriff's employees engaged in a practice of viewpoint discrimination that was "so well-settled and pervasive that it assume[d] the force of law." *Denno v. Sch. Bd. of Volusia Cty.*, 218 F.3d 1267, 1277 (11th Cir. 2000). He fails to do so. Accordingly, we affirm the district court's order granting judgment for Sheriff

9

Darnell on Charudattan's First Amendment claims as they relate to the Sheriff's Office Facebook page.

    B.  *Campaign Facebook Page*

A claim pursuant to § 1983 cannot succeed without some violation of rights committed "under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999). There is not a clear distinction between public and private activity, and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 453 (1974)). Sheriff Darnell contends that the allegations by Charudattan regarding the Campaign Page do not constitute state action because the page is privately owned, does not post on behalf of the Sheriff's Office, and was used as a political platform for her reelection campaign. On the contrary, Charudattan asserts that the Campaign Page was a government page because Sheriff Darnell renamed the page after the 2016 election and off-duty deputies monitored the page and comments.

We conclude from the record that the district court properly found that the Campaign Page was privately owned. The Campaign Page featured posts about

Sheriff Darnell's reelection campaign and included pictures of campaign events, endorsements, and statements about her law enforcement philosophy and experience. Moreover, Sheriff Darnell created and administered the page for her private reelection campaign; the page did not include her official title at the time of the alleged unconstitutional action; the page did not contain posts on behalf of the Sheriff's Office; and the page was not categorized as belonging to a "government official."

We also conclude from the record that the district court properly found that the off-duty deputies' management of the Campaign Page did not establish state action. Charudattan argues that the off-duty deputies who monitored the page were acting on behalf of the State because they were not true "volunteers." He contends that due to their employment, they had to manage the Campaign Page. However, he does not present any record evidence to support his assertion. "Not all acts by state employees are acts under color of law" . . . and "acts of officers in the ambit of their personal pursuits are not done under color of law." *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (internal quotation marks and citations omitted). "A defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The dispositive issue in these cases is "whether the defendant was

11

exercising the power she possessed based on state authority or was acting only as a private individual." *Id.*

As the district court concluded, the conduct at issue was not done under color of law because the Campaign Page was a private page for Sheriff Darnell's reelection, paid for by Sheriff Darnell, and operated by volunteer off-duty deputies. The deputies were not acting in any official capacity at the time, and Charudattan presents no evidence to the contrary. Thus, we conclude from the record that the district court properly determined that there was no state action as to the Campaign Page and, thus, no First Amendment violation.

Accordingly, for the aforementioned reasons, we affirm the district court's order granting judgment to Sheriff Darnell.

AFFIRMED.